UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

WILLIS MINIX, JR.                             DOCKET NO. 6:09-cv-01767

VERSUS                                        JUDGE MELANÇON

MICHAEL J. ASTRUE,                            MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before this Court is an appeal of the Commissioner of Social Security's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be REVERSED and REMANDED for reconsideration consistent with this report and recommendation.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

Willis Minix, Jr. was born on December 20, 1961,[1] and he is currently 48 years old. In 2007, when he was 45 years old, Mr. Minix applied for Supplemental Security

---

[1]     Rec. Doc. 8-3 at 26; Rec. Doc. 8-6 at 2.

Income ("SSI") benefits, as well as for any other available Social Security benefits, alleging that he became disabled on January 31, 1998.[2]

In 1989, Mr. Minix was injured when he sustained gunshot wounds to the left thigh, right forearm, and chest,[3] and he claims that he has experienced shortness of breath since being shot in the chest.[4]  In 1994 or 1995, Mr. Minix fell down a long flight of concrete stairs while working as a beer vendor at the Summit[5] and injured his low back.[6]  In a function report prepared on February 1, 2007, Mr. Minix complained of sweating, shortness of breath, numbness in his right leg, burning in his left leg, back pain, numbness in his left armpit, an inability to stand up for very long, and an inability to lift or push any objects.[7]  His work history report lists no employment after 1998.[8]  On February 13, 2007, it was determined that Mr. Minix

---

[2]     Rec. Doc. 8-6 at 2.

[3]     Rec. Doc. 8-9 at 25.

[4]     Rec. Doc. 8-3 at 35.

[5]     The Summit formerly was a multi-purpose sports facility in Houston, later renamed Compaq Center.   Since 2005, it has been a church sanctuary. http://en.wikipedia.org/wiki/Houston_Summit.

[6]     Rec. Doc. 8-8 at 3, 56.

[7]     Rec. Doc. 8-7 at 6-14.

[8]     Rec. Doc. 8-7 at 15-23.

was not insured for disability benefits.[9]  At that time, the disabilities alleged by Mr. Minix were disorders of the back (discogenic/degenerative) and chronic pulmonary insufficiency ("COPD").[10]

On March 29, 2007, Mr. Minix's application for SSI payments was denied, based on the finding that, although he could no longer perform his past work, he could do other work.[11]  Mr. Minix requested a hearing before an administrative law judge ("ALJ"),[12] which was held on December 3, 2008.[13]  Mr. Minix testified at the hearing, and he was represented by a non-lawyer, paralegal Marian R. Frye.  The ALJ rendered an unfavorable ruling on March 13, 2009.[14]  Mr. Minix requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied review.[15] This appeal followed.

---

[9]     Rec. Doc. 8-4 at 2.

[10]    Rec. Doc. 8-4 at 4.

[11]    Rec. Doc. 8-5 at 2.

[12]    Rec. Doc. 8-5 at 7.

[13]    The transcript of the hearing is found in Rec. Doc. 8-3 at 19-61.

[14]    Rec. Doc. 8-3 at 7.

[15]    Rec. Doc. 8-3 at 2.

## ASSIGNMENT OF ERRORS

Mr. Minix contends that the Commissioner erred in denying his application for Social Security benefits for three reasons.  First, he contends that the ALJ erred in determining, at Step Four of the requisite analysis, that he retains the capacity to perform light duty work.  Second, he contends that the ALJ erred in asking a defective hypothetical question at Step Five of the analysis, resulting in an unreliable analysis of the jobs available in the national economy.  Finally, he contends that he was prejudiced because the ALJ failed to fully and fairly develop the facts of the case.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining (a) whether the decision was supported by substantial evidence and (b) whether the proper legal standards were applied in reaching that decision.[16]  If the ALJ's findings are supported by substantial evidence, they must be affirmed.[17]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla

---

[16]     *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[17]     *Patterson v. Astrue*, 324 Fed. App'x 419, 421 (5th Cir. 2009); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

and less than a preponderance.[18]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[19] Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[20]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the ALJ.[21]

## DISCUSSION

After analyzing the entirety of the record, the undersigned finds that the ALJ's decision that Mr. Minix is not disabled is not supported by substantial evidence, for the following reasons.

The Social Security regulations define the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[22]

---

[18]    *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[19]    *Boyd v. Apfel,* 239 F.3d at 704.

[20]    *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[21]    *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[22]    42 U.S.C. § 423(d)(1)(A).

"Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit.[23]

The Commissioner uses a five-step sequential analysis to determine whether a claimant is disabled:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.[24]

The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.[25]  If the Commissioner makes the

---

[23]     20 C.F.R. § 404.1572(a)-(b).

[24]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

[25]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

-6-

necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[26]

   If the ALJ determines that the claimant is disabled at any step, the analysis ends.[27]  If the ALJ cannot make a determination at any step, he goes on to the next step.[28]  Before going from step three to step four, the ALJ assesses the claimant's residual functional capacity[29] by determining, based on all relevant evidence in the claimant's record, the most the claimant can still do despite his physical and mental limitations.[30]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and it is used at the fifth step to determine whether the claimant can adjust to any other type of work.[31]

   In this case, the Commissioner's findings are set forth in the ALJ's ruling of March 13, 2009.  At Step One, the ALJ found that Mr. Minix has not engaged in

---

[26]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[27]    20 C.F.R. § 404.1520(a)(4).

[28]    20 C.F.R. § 404.1520(a)(4).

[29]    20 C.F.R. § 404.1520(a)(4).

[30]    20 C.F.R. § 404.1545(a)(1).

[31]    20 C.F.R. § 404.1520(e).

substantial gainful activity since January 30, 2007, the application date.[32]  At Step

Two, he found that Mr. Minix has the following severe physical impairments:

disorders of the back, discogenic and degenerative, with chronic low back pain;

chronic obstructive pulmonary disease ("COPD"), with shortness of breath on

exertion; and residuals of gunshot wound.[33]  The ALJ found, at Step Three, that Mr.

Minix does not have an impairment or combination of impairments that meets or

medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.[34]

The ALJ then found that Mr. Minix retains the residual functional capacity to perform

light work.[35]  At Step Four, the ALJ found that Mr. Minix has no relevant past work,

and, at Step Five, he found that jobs exist in significant numbers in the national

economy that Mr. Minix can perform.[36]

---

[32]     Rec. Doc. 8-3 at 12.  The source for that application date is unclear.  The record contains an unsigned application summary for SSI that says Mr. Minix applied for SSI payments on February 13, 2007.  Rec. Doc. 8-6 at 2.  Mr. Minix filled out a function report dated February 1, 2007.  Rec. Doc. 8-7 at 6-14.  He also filled out a work history report dated March 12, 2007.  Rec. Doc. 8-7 at 15-23.

[33]     Rec. Doc. 8-3 at 12.

[34]     Rec. Doc. 8-3 at 12.

[35]     Rec. Doc. 8-3 at 13.

[36]     Rec. Doc. 8-3 at 16.

## A.   THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The ALJ found that Mr. Minix has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except standing and/or walking for only up to five hours in an eight hour workday, standing and/or walking for only up to one hour at a time (without interruption), unlimited sitting, and the need to avoid exposure to heights, machinery, and vibration.[37]   The ALJ was careful to note that, in making this determination, he gave careful consideration to the entire record.[38]   He also gave "great weight" to the opinion of the consultative examiner, Dr. Stephen Ayers,[39] and his findings regarding Mr. Minix's capabilities largely mirror those of Dr. Ayers.

Significantly, however, the ALJ ignored a critical element of Dr. Ayers's "Medical Assessment of Ability to Do Work-Related Activities."   At the bottom of the last page of the assessment, just above his signature, Dr. Ayers wrote:  "He [Mr. Minix] needs to be further evaluated by Pain Management – and his PCP [primary care physician]."[40]  Dr. Ayers reiterated this in the body of his report to the Disability Determination Services, stating, "He [Mr. Minix] is to follow up with a PCP [primary

---

[37]       Rec. Doc. 8-3 at 13.

[38]       Rec. Doc. 8-3 at 13.

[39]       Rec. Doc. 8-3 at 16.

[40]       Rec. Doc. 8-3 at 9.

care physician] for further evaluation of his condition."[41]   Dr. Ayers did not
recommend that Mr. Minix see other doctors for treatment; to the contrary, he very
clearly recommended that Mr. Minix undergo further evaluation by a primary care
doctor and a pain management specialist.  A need for evaluation is very different from
a need for treatment and clearly indicates that Dr. Ayers's assessment was, at best,
premature and/or incomplete.

Dr. Ayers recognized a need for further evaluation of Mr. Minix's ability to
perform work-related activities by a pain management specialist and also by a primary
care physician.  The value of Dr. Ayers's opinion is, therefore, limited by Dr. Ayers's
recommendations and subject to revision following further evaluation by other
physicians.  It was improper for the ALJ to give great weight to Dr. Ayer's opinions
but simultaneously ignore his very clearly stated opinion that further evaluation was
needed.

At each step of the sequential analysis, the ALJ has a duty to fairly and fully
develop the record.[42]  When the ALJ fails in this duty, his decision is not supported

_____

[41]      Rec. Doc. 8-8 at 7.

[42]      *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 557
(5th Cir. 1995).

by substantial evidence.[43]  Dr. Ayers's opinion, which was set forth on the "Medical Assessment of Ability to do Work-Related Activities" and again in his report, should have alerted the ALJ of the need for further evaluation of Mr. Minix's residual functional capacity prior to rendering an opinion.  Because the ALJ ignored Dr. Ayers's opinion and did not request that Mr. Minix undergo further functional evaluation by a pain management specialist and a primary care physician, the ALJ's determination that Mr. Minix has the residual functional capacity to perform light work is not supported by substantial evidence.

Accordingly, the undersigned recommends that this matter be remanded for further evaluation of Mr. Minix's residual functional capacity by both a pain management specialist and a primary care physician.

## B.   THE HYPOTHETICAL QUESTIONS POSED BY THE ALJ

An ALJ is permitted to rely on the expertise of a vocational expert to determine whether the plaintiff's residual work skills can be used in other occupations and in identifying the specific occupations in which those skills may be used.[44]  "The value of a vocational expert is that he is familiar with the specific requirements of a

---

[43]     *Winston ex rel. D.F. v. Astrue*, 341 Fed. App'x 995, 997 (5th Cir. 2009); *Kane v. Hacker*, 731 F.2 1216, 1219 (5th Cir. 1984).

[44]     20 C.F.R. § 404.1566(e).

-11-

particular occupation, including working conditions and the attributes and skills needed."[45]

To establish that work exists for a claimant at Steps Four and Five of the sequential disability determination process, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question.[46]  A hypothetical question posed by an ALJ to a vocational expert must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question.[47]  If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite an impairment, a claimant could perform available work.[48]  In other words, "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ... a determination of non-disability based on such a defective question cannot stand."[49]

---

[45]     *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[46]     *Boyd v. Apfel*, 239 F.3d at 706-07; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[47]     *Bowling v. Shalala*, 36 F.3d at 436.

[48]     *Boyd v. Apfel*, 239 F.3d at 708.

[49]     *Bowling v. Shalala*, 36 F.3d at 436.

Mr. Minix contends that the ALJ erred in deciding that he is not disabled because the ALJ reached that conclusion by relying upon the vocational expert's responses to improper hypothetical questions posed at the hearing.  In particular, he argues that the ALJ failed to incorporate into the Step Five hypothetical questions the severe impairment of chronic obstructive pulmonary disease, which the ALJ recognized as one of Mr. Minix's severe impairments.

Shirley Dickie is the vocational expert who testified at Mr. Minix's hearing. The ALJ asked her two questions.  First, the ALJ asked:

> Presuming a hypothetical individual, the same age, education and vocational background as the Claimant, who can lift and carry 25 to 50 pounds... occasionally during the day – frequently, we can go 10 to 25, who can stand and walk at least five hours in an eight-hour day and can stand and walk, without interruption, for at least one hour at a time, no impairments sitting and must avoid exposure to heights, moving machinery and vibration.  Are there any jobs that such a hypothetical individual could perform?[50]

Ms. Dickie replied, "Yes, sir."[51]  She then described a variety of light jobs that could be performed by such an individual and explained that these jobs are plentiful in the national and state economies.[52]

---

[50]     Rec. Doc. 8-3 at 56.

[51]     Rec. Doc. 8-3 at 56.

[52]     Rec. Doc. 8-3 at 56-57.

-13-

The ALJ then asked:

> If you would then consider a completely different person, same age, education and vocational background as the Claimant but who could only perform the physical exertional requirements of sedentary work as defined in the regulations, who could only occasionally climb ramps and stairs, occasionally balance and stoop but never climb ropes, ladders, scaffold, kneel, crouch or crawl, never work... over head level so is there any jobs that such a hypothetical individual could perform?[53]

He then modified the question to include further restrictions on this second hypothetical person including avoiding heights, moving machinery, and vibration.[54] Ms. Dickie's reply is not clearly articulated but it appears that she found no sedentary jobs in substantial numbers that the second hypothetical person would be able to perform.[55]

In his ruling, the ALJ found that Mr. Minix "has the residual functional capacity to perform light work."[56]   Presumably, this finding was based on Ms. Dickie's response to the first hypothetical posed by the ALJ at the hearing.

---

[53]     Rec. Doc. 8-3 at 57.

[54]     Rec. Doc. 8-3 at 57.

[55]     Rec. Doc. 8-3 at 57-58.

[56]     Rec. Doc. 8-3 at 13.

-14-

During the hearing, however, Mr. Minix explained that, since he was shot in the chest, he sometimes has shortness of breath with exertion.[57]  Dr. Stephen C. Ayers, the physician who examined Mr. Minix at the request of the Disability Determination Services, diagnosed Mr. Minix with shortness of breath with exertion and COPD.[58]  In his ruling, the ALJ found that Mr. Minix's severe impairments include "chronic obstructive pulmonary disease, with shortness of breath on exertion."[59]  But the hypothetical questions asked by the ALJ did not mention any type of breathing problems or COPD.  Consequently, The ALJ's reliance on the hypothetical questions posed by the vocational expert was improper because the questions did not incorporate all of the disabilities that the ALJ ultimately determined to be credible.

Under some circumstances, the claimant or his representative may correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions.  But a party's failure to point out the problems in a defective hypothetical does not automatically salvage that

---

[57]   Rec. Doc. 8-3 at 34.

[58]   Rec. Doc. 8-8 at 7.

[59]   Rec. Doc. 8-3 at 12.

hypothetical as a proper basis for a determination of non-disability.[60]  In this case, Mr.
Minix's representative had the opportunity to remedy the ALJ's hypothetical
questions.  At the conclusion of his questioning of Ms. Dickie, the ALJ asked Ms.
Frye, "do you have any questions for Ms. Dickie."[61]  Ms. Frye replied that she did
not.[62]  But Ms. Frye is not an attorney, and she had already questioned Mr. Minix
extensively after the ALJ asked him relatively few questions.  This is the type of
situation in which the failure to remedy the defective hypothetical questions does not
overcome the defects in the questions.

For a hypothetical question to be proper, it need only incorporate the
disabilities that the administrative law judge recognizes.[63]  This is accomplished if the
hypothetical incorporates the plaintiff's residual functional capacity.[64]  Here, the
hypothetical questions posed by the ALJ to the vocational expert at the hearing did
not incorporate all of the impairments that Mr. Minix testified about or all of the

---

[60]     *Boyd v. Apfel*, 239 F.3d at 707, citing *Bowling v. Shalala*, 36 F.3d at 436.

[61]     Rec. Doc. 8-3 at 58.

[62]     Rec. Doc. 8-3 at 58.

[63]     *Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) (unpublished),
citing *Bowling v. Shalala*, 36 F.3d at 435; *Morris v. Brown*, 864 F.2d 333, 336 (5th Cir. 1988).

[64]     See *White v. Astrue*, 240 F. App'x 632, 634 (5th Cir. 2007) (per curiam) (unpublished)
("Because the VE's testimony, which [plaintiff] did not challenge through cross-examination, was
elicited by hypothetical questions incorporating the RFC determination, such reliance was proper.")

impairments that the ALJ ultimately found to be severe.  For that reason, the vocational expert did not have all of the information needed to make a proper recommendation.  Accordingly, the undersigned finds that the ALJ's hypothetical questions were inadequate and that, in relying upon the responses to those questions, the ALJ did not carry his burden of proof to show that despite an impairment, the claimant could perform available work.[65]  Therefore, the undersigned recommends that this matter be remanded for further consideration of the jobs available in the national economy that Mr. Minix can perform.


C.     THE ALJ FAILED TO FULLY DEVELOP THE RECORD.

Mr. Minix contends that the Commissioner's decision that he is not disabled is incorrectg because the ALJ failed to fully and completely develop the record.  In reviewing a claim for benefits, an ALJ is under an obligation to fairly and fully develop the record to ensure that his decision is an informed decision based on sufficient facts.[66]  When a claimant is unrepresented by legal counsel, this obligation becomes "a special duty" that requires the ALJ to "scrupulously and conscientiously

---

[65]     *Boyd v. Apfel*, 239 F.3d at 708.

[66]     *Brock v. Chater*, 84 F.3d at 728; *Ripley v. Chater*, 67 F.3d at 557.

probe into, inquire of, and explore for all the relevant facts."[67]  If the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and the ALJ's decision is not supported by substantial evidence.[68]  Still, the burden to demonstrate a disability is always on the claimant; therefore, if the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence.[69]  Thus, the failure of the ALJ to develop an adequate record is not a valid basis for reversal per se.[70]  Instead, the claimant is required to show that, had the ALJ fully developed the record, evidence would have been adduced that might have altered the result.[71]  When these principles are applied, an ALJ's decision is not supported by substantial evidence if the claimant demonstrates "(1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby."[72]

---

[67]     *Winston v. Astrue*, 341 Fed. App'x at 997; *Kane v. Hacker*, 731 F.2d at 1219.

[68]     *Winston v. Astrue*, 341 Fed. App'x at 997; *Kane v. Hacker*, 731 F.2 at 1219.

[69]     *Winston v. Astrue*, 341 Fed. App'x at 997; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

[70]     *Kane v. Heckler*, 731 F.2d at 1220.

[71]     *Kane v. Hacker*, 731 F.2d at 1220.

[72]     *Brock v. Chater*, 84 F.3d at 728.

-18-

In this case, Mr. Minix was represented at the hearing but his representative was not an attorney.[73]  Therefore, the ALJ had a heightened duty to make sure that the record was fully developed.[74]

The undersigned finds that at least two important factual issues should have been more fully developed by the ALJ before his decision was rendered.  First, the ALJ hired Dr. Stephen Ayers to conduct an examination of Mr. Minix and provide his opinions concerning Mr. Minix's ability to perform work-related activities.  A consultative evaluation is required only "when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment."[75]  The decision to order a consultative examination is within the discretion of the ALJ.[76]  Such an examination is required only when the ALJ cannot otherwise make a disability determination.[77]  Because the Commissioner hired Dr. Ayers to perform a consultative evaluation in this case, it must be presumed that the ALJ was unable to determine, without input from Dr. Ayers, whether Mr. Minix was or was not disabled.

---

[73]       Rec. Doc. 8-3 at 22; Rec. Doc. 8-7 at 40.

[74]       *Winston v. Astrue*, 341 Fed. App'x at 997; *Kane v. Hacker*, 731 F.2d at 1219.

[75]       *Brock v. Chater*, 84 F.3d at 728.

[76]       *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *Anderson v. Sullivan*, 887 F.2d at 634; *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

[77]       *Anderson v. Sullivan*, 887 F.2d at 634; *Jones v. Bowen*, 829 F.2d at 526.

But the ALJ then ignored Dr. Ayers's recommendation – which is set forth not once but twice in his reporting – that Mr. Minix should be further evaluated by both a pain management specialist and a primary care physician. Dr. Ayers stated this opinion on the face of his "Medical Assessment of Ability to do Work-Related Activities"[78] and again in his report to the Disability Determination Services.[79] The words used by Dr. Ayers are significant. He did not say that Mr. Minix needed to be treated by a pain management specialist or a primary care physician; instead, he expressly stated – twice – that Mr. Minix needed further evaluation of his condition by physicians of that type. When there is a medical consensus that the claimant should be further evaluated to determine the extent of his limitations, the ALJ's duty to develop the record by ordering a consultative examination is triggered,[80] and an ALJ errs when he fails to order a consultative examination when such an evaluation is necessary for him to make an informed decision.[81]

In this case, Dr. Ayers expressly recognized a need for further evaluation that was ignored by the ALJ. In ignoring Dr. Ayers's recommendation, the ALJ failed to

---

[78]     Rec. Doc. 8-8 at 8.

[79]     Rec. Doc. 8-8 at 7.

[80]     *Lewis v. Astrue*, 2009 WL 4030781, 4 (N.D. Tex. 2009).

[81]     *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (5th Cir. 1984); *Ford v. Sec'y of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981).

fully develop the record.  Evaluation by a pain management specialist or by a primary care physician, which the consulting examiner said is needed, might alter the outcome.  Therefore, the ALJ's failure does not warrant an automatic reversal of the ALJ's decision, but it does warrant remand of this matter so that the record can be fully developed.

Second, Mr. Minix testified at the hearing that he was scheduled to undergo back surgery.[82]  This is consistent with certain of Mr. Minix's medical records.  On December 27, 2007, he was referred by physicians at University Medical Center in Lafayette, Louisiana, to the neurosurgery department at LSU's hospital in Shreveport.[83]   Mr. Minix also testified that he was examined by doctors in Shreveport.[84]  But the record contains no documents from LSU-Shreveport.

A recommendation for back surgery is critically important, and the ALJ had an obligation to fully and fairly develop the record in that regard.  In his ruling, however, the ALJ erroneously stated that Mr. Minix "testified that his only current medical treating source was University Medical Center"[85] and he did not mention the surgery

---

[82]      Rec. Doc. 8-3 at 38-39.

[83]      Rec. Doc. 8-8 at 21.

[84]      Rec. Doc. 8-3 at 39.

[85]      Rec. Doc. 8-3 at 15.

-21-

recommendation.  An ALJ is required to consider all of the record evidence and cannot pick and choose only the evidence that supports his position.[86]  Information from the back surgeon is important because it might alter the ALJ's ultimate decision on disability.  The ALJ has a duty to contact a treating physician if the doctor's records are inadequate, contain a conflict or ambiguity, lack necessary information or do not appear to be based on medically acceptable diagnostic techniques.[87]  Here, the surgeon's records are not contained in the record.  Thus, the ALJ erred in failing to contact that physician and further develop the record.

The ALJ's duty to fully and fairly develop the facts relevant to a claim for benefits includes a responsibility to develop a complete medical history for the relevant period.[88]  Accordingly, the undersigned finds that the ALJ failed to develop the record by failing to obtain Mr. Minix's records from the Shreveport hospital and/or from the physician who is going to perform the surgery and by failing to consider the surgery recommendation in reaching the conclusions set forth in his ruling, warranting remand for reconsideration of the ALJ's ruling.

---

[86]     *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[87]     See 20 C.F.R. §§ 404.1512(e).

[88]     20 C.F.R. § 416.912(d).

When the ALJ fails to develop the record, he does not have before him sufficient facts on which to make an informed decision; accordingly, such a decision is not supported by substantial evidence.  In this case, therefore, the undersigned finds that the ALJ's decision was not based on substantial evidence and, for that reason, the undersigned recommends that this matter be remanded so that information from the LSU neurosurgeon who treated Mr. Minix can be obtained and evaluated and so that Mr. Minix's functional capacity can be evaluated by a primary care physician and a pain management specialist.

## CONCLUSION AND RECOMMENDATION

The Commissioner's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence; consequently, the undersigned finds that the Commissioner's ultimate conclusion that Mr. Minix is not disabled, likewise was not supported by substantial evidence.[89]  Courts have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.[90]  When reversal is warranted, the

---

[89]    *Ross v. Astrue*, 2010 WL 2730920, 8 (W.D. La. 2010).

[90]    42 U.S.C. § 405(g).

-23-

matter can be remanded with instructions to make an award only if the record conclusively establishes that the claimant is entitled to benefits.[91]  That is not the case here.  The record in this matter should be supplemented with functional evaluations by a pain management specialist and a primary care physician as well as with records and/or opinions from the surgeon with whom Mr. Minix consulted.  Once the record has been fully developed, Mr. Minix's residual functional capacity should be evaluated and a determination should be made with regard to whether he is or is not disabled.  Consequently, the undersigned RECOMMENDS that this matter be REVERSED and REMANDED for reconsideration in accordance with this report and recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

---

[91]    See, e.g., *Ross v. Astrue*, 2010 WL at 8, citing *Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); and *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980).

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of January, 2011.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)